**Sterling RIGGS, Appellant–Petitioner,**

v.

**STATE of Indiana, Appellee–Respondent.**

No. 49A02–9702–PC–120.

Court of Appeals of Indiana.

Dec. 15, 1997.

John Pinnow, Special Assistant to the State Public Defender, Greenwood, for Appellant-Petitioner.

Jeffrey A. Modisett, Attorney General, Rafal Ofierski, Deputy Attorney General, Indianapolis, for Appellee-Respondent.

## OPINION

FRIEDLANDER, Judge.

Sterling Riggs appeals from the denial of his petition for post-conviction relief, raising the following restated issues:

1. Did the post-conviction court err in rejecting Riggs's claim that he was denied the right to be present at all

critical stages of the proceedings when neither Riggs nor his attorney was present when the trial court informed the jury during deliberations that the court could not answer the jury's questions about the evidence and denied its request for certain items of physical evidence?

2. Did the post-conviction court err in determining that Riggs was not denied the effective assistance of appellate counsel?

We affirm.

At approximately 4:00 or 4:30 a.m. on April 24, 1985, B.R., a worker at the Central Manor Nursing Home, heard a noise in the next room. When she went to investigate, she ran into Riggs, who was standing in the corner just inside the doorway. B.R. backed up and started to scream. Riggs put a knife to B.R.'s throat and told her not to scream. Riggs then led B.R. out the back door of the nursing home, down an alley, and into a garage, where he removed some of her clothing and repeatedly sexually assaulted her. He then led her out of the garage and into a clearing between two vacant houses where he again subjected her to repeated sexual assaults. Riggs then took B.R.'s pantyhose and left.

B.R. gave police a description of her attacker, and at approximately 5:45 a.m., an officer found Riggs, who matched the description given by B.R., walking down an alley twelve or thirteen blocks from the crime scene. When the officer told him to stop, Riggs tossed a pair of white pantyhose towards a trash dumpster. Officers found a butcher knife stuck in the back of Riggs's jeans.

B.R. subsequently identified Riggs in a lineup as the man who had attacked her. Riggs was charged with confinement, attempted criminal deviate conduct, two counts of criminal deviate conduct, and rape. At trial, B.R. testified against Riggs and identified the pantyhose retrieved from the alley by the police as those which belonged to her. She also testified at trial that her pantyhose size was extra-large.

Riggs denied that he had thrown anything just before he was taken into custody. A woman who lived in the area where Riggs was arrested testified that she wore an all-white uniform, including hosiery, on her job as a home health care aide and that she threw her trash in the dumpsters in the alley behind her home. The woman also testified that she did not throw her pantyhose in the grass around the dumpsters.

The jury commenced deliberations at 7:30 p.m. on August 20, 1985. At 12:45 a.m., the jury sent the judge a note which stated: "1 Are there any size markings on the pantyhose?[,] 2 If there are, what size are the pantyhouse [sic]?[, and] 3 Were there any lab tests on the pantyhouse [sic]?" *Record* at 117. The trial judge responded in writing: "Can't answer any questions about the evidence." *Record* at 117. The jury made an additional request, which stated: "Pictures[,] Panties[,] P.H[, and] Pants". *Record* at 118. The trial judge again responded in writing, stating, "Can't have any evidence". *Record* at 118. At 2:15 a.m., the jury announced that it had reached a verdict. Riggs was found guilty on all five counts. Our supreme court affirmed Riggs's convictions on June 16, 1987. *Riggs v. State,* 508 N.E.2d 1271 (Ind. 1987).

Riggs thereafter filed a petition for post-conviction relief, arguing that the trial court erred in failing to notify Riggs and his attorney of the jury's requests and that he was denied the effective assistance of trial and appellate counsel. At the hearing on the petition, Riggs testified that, while in jail awaiting the jury's verdict, he was never notified that the jury had any questions, and he was not returned to the courtroom at any time before the jury returned its verdict. Defense counsel representing Riggs also had no recollection of having been notified during deliberations that the jury had questions.

The post-conviction court denied Riggs's petition for relief, concluding that the trial court's actions did not amount to prejudicial or fundamental error and that neither trial nor appellate counsel was ineffective for failing to raise the issue.

## 1.

The post-conviction court did not err in denying Riggs's petition for post-conviction relief.

■ While communications between a judge and a deliberating jury are forbidden, such communications create only a rebuttable inference of prejudice. *Marsillett v. State,* 495 N.E.2d 699 (Ind.1986). If the inference of prejudice is rebutted, the error is deemed harmless. *Id.* Courts in Indiana have repeatedly held that, where a trial judge merely responds to a jury's questions by denying the request, any inference of prejudice is rebutted and the error, if any, is harmless. *Id.*; *Madden v. State,* 656 N.E.2d 524 (Ind. Ct.App.1995), *trans. denied; Jones v. State,* 656 N.E.2d·303 (Ind.Ct.App.1995), *trans. denied.* In addition, even where an ex parte communication occurred, the trial court's mere denial of the jury's request to review exhibits does not result in prejudicial error. *Moffatt v. State,* 542 N.E.2d 971 (Ind.1989). Because the trial court in this case merely denied the jury's requests for physical evidence and for answers to its questions, the court's error in conducting ex .parte communications with the jury was harmless.

We are not persuaded by Riggs's claim that the presumption of prejudice was not rebutted in this case because the "chronology of jury requests in the context of the evidence presented at trial demonstrate[d] there was a disagreement among the jurors over the physical evidence." Appellant's Brief at 13. Riggs acknowledges that jury requests to review exhibits are not within the scope of Ind.Code Ann. § 34–1–21–6 (West 1983), which governs jury requests for information after deliberations have begun where there is a disagreement among jurors as to any part of the testimony or where the jurors desire to be informed with regard to any point of law arising in the case. In addition, Riggs acknowledges on appeal that he is not claiming error based upon IC § 34–1–21–6.

However, he cites case law in support of his position which relies upon and interprets the statute.

■ Because IC § 34–1–21–6 does not apply either to jury requests to review exhibits or when the jury simply inquires about certain items of physical evidence, Riggs is not entitled to any relief on the basis of the statute. In *Jones,* 656 N.E.2d at 307, this court stated: "Jury requests to review exhibits are not within the scope of IC § 34–1–21–6." In *Anglin v. State,* 680 N.E.2d 883 (Ind. Ct.App.1997), *trans. denied,* a different panel of this court recently commented on the foregoing statement in *Jones* and ostensibly clarified what the *Jones* panel meant by such statement, stating:

> In *Jones v. State* (1995) Ind.App., 656 N.E.2d 303, 307, *trans. denied,* this court stated: "Jury requests to review exhibits are not within the scope of I.C. 34–1–21–6." The discussion following the statement clarified our meaning that the statute did not apply *in that case* because the jury request did not indicate that there was any disagreement among the jurors as to the testimony relating to the note. While our intent was otherwise, we acknowledge that the above-quoted statement may be interpreted as authority for the proposition that requests to review exhibits are *never·*within the scope of the statute. We note that such would, of course, be an incorrect statement of the law.

*Anglin,* 680 N.E.2d at 885 n. 2. The *Anglin* court's interpretation of what the panel in *Jones* meant is wrong. The statute specifically addresses only those situations where there is either "a disagreement between [the jurors] as to any part of the *testimony* " or where the jurors "desire to be informed as to any point of law in the case". IC § 34–1–21–6 (emphasis supplied). Requests by the jury to review exhibits, which are items of physical evidence, are never within the scope of the statute.[1]

1. The concurrence states: "the indication in *Jones v. State, supra,* to the effect that a jury is not entitled to view exhibits in any circumstances because the statute is limited to testimony and points of law is overly broad." *Op.* at 464, n. 2. We respectfully disagree with this characterization of what *Jones* indicated. As noted above, we stated in *Jones* that jury requests to review exhibits are not within the scope of IC § 34–1–21–6. Whether an exhibit may be viewed by a jury is a determination that IC § 34–1–21–6 was not intended to address, and *Jones* simply indicated

The court in *Anglin* was also wrong when it stated that IC § 34–1–21–6 is triggered whenever the jury requests to rehear testimony or see exhibits for a second time. The *Anglin* court stated:

> We agree [with this court's opinion in *State v. Winters*, 678 N.E.2d 405 (Ind.Ct.App. 1997),] that, when a jury requests that it be given the opportunity to rehear testimony or see exhibits for a second time, the jury is expressing disagreement or confusion about that evidence, sufficient to trigger application of I.C. 34–1–21–6, unless the circumstances surrounding the request indicate otherwise.

*Anglin*, 680 N.E.2d at 885.

Where the jury does not explicitly manifest any disagreement about the testimony or does not ask for clarification of a legal issue, IC § 34–1–21–6 simply does not apply. *Johnson v. State*, 674 N.E.2d 180 (Ind.Ct. App.1996), *trans. denied; State v. Chandler,* 673 N.E.2d 482 (Ind.Ct.App.1996). This view is supported by the plain language of the statute, which states:

> After the jury have retired for deliberation, if there is a disagreement between them as to any part of the testimony, or if they desire to be informed as to any point of law arising in the case, they may request the officer to conduct them into court, where the information required shall be given in the presence of, or after notice to, the parties or their attorneys.

To conclude, as did the *Anglin* court, that unless the surrounding circumstances indicate otherwise, any request to view exhibits or rehear testimony necessarily stems from jury disagreement, is to engage in an impermissible judicial revision of the statute. *See State v. Winters*, 678 N.E.2d 405, 412 (Ind. Ct.App.1997) (Friedlander, J., concurring):

> [T]he view expressed by the majority [in *Winters* ] constitutes an impermissible judicial revision of the statute. Such an interpretation ignores the condition precedent clearly stated in the statute (manifest disagreement) and instead transforms the statute into one whose mandatory provi-

that the statute had no bearing on such a deter-

sions are triggered *whenever* such a request is made.

The jury in this case did not seek clarification of a legal issue, and the jury's questions about the physical evidence and its mere request to view such evidence did not amount to an expression of disagreement between the jurors which would have required the court to provide the requested information to the jury after notice to the parties or their attorneys. Accordingly, IC § 34–1–21–6 is simply inapplicable and provides no basis for relief in this case.

### 2.

The post-conviction court correctly determined that Riggs was not denied the effective assistance of appellate counsel. Where a trial court's ex parte communication with the jury is deemed to be harmless error, the appellate attorney's failure to raise such issue on direct appeal does not amount to ineffective assistance of counsel. *Johnson,* 674 N.E.2d 180.

Judgment affirmed.

STATON, J., concurs.

SULLIVAN, J., concurs in result with separate opinion.

SULLIVAN, Judge, concurring in result.

The majority opinion accurately reflects the divergence among and between various panels of this court with respect to a request by a jury, during deliberations, to review evidence or receive clarification. Compare *Anglin v. State* (1997) Ind.App., 680 N.E.2d 883, *trans.denied* and *State v. Winters* (1997) Ind.App., 678 N.E.2d 405 with *Johnson v. State* (1996) Ind.App., 674 N.E.2d 180, *trans. denied, State v. Chandler* (1996) Ind.App., 673 N.E.2d 482 and *Jones v. State* (1995) Ind.App., 656 N.E.2d 303, *trans. denied.*

The crucial language which should govern our determination may be found in *Marsillett v. State* (1986) Ind., 495 N.E.2d 699, to the effect that the right of the parties to be present before the court communicates with the jury is triggered by the jury's request

mination.

"for additional guidance". *Id.* at 709. More importantly, in *Marsillett,* the court did not begin and end its inquiry with a narrow interpretation of the trial court's duty under I.C. 34–1–21–6 as does the majority here. The statute is not the sole consideration.

The court in *Marsillett* clearly and unmistakably said:

> "The trial court is imbued with discretion to determine whether the jury should *view an exhibit* during deliberations". 495 N.E.2d at 710. (Emphasis supplied).

The court did not restrict the jury to rehearing "testimony" or gaining clarification upon a "point of law" as mentioned in the statute.

Here, as in *Anglin,* the trial court no doubt assumed that it was precluded from permitting the jurors to view the exhibits in open court. Such assumption was clearly wrong. The jury sought clarification concerning testimony as to the size and nature of the white pantyhose worn by the victim, taken by the defendant and discarded by him near a trash barrel. It is possible that the jury was interested in considering the exhibit in the light of extremely general and remote testimony concerning white pantyhose worn as a part of her work uniform by a woman who lived in the area and who sometimes threw trash in the dumpsters in the alley. The witness did not indicate that she disposed of old pantyhose in that matter and specifically stated that she did not dispose of such items by throwing them upon the ground in proximity to the area where defendant was apprehended. On the other hand, the jury may have wished merely to review the pantyhose exhibit in light of the victim's testimony that she wore an extra large size.[2] Under the circumstances surrounding the jury request, the trial court had discretion to assist the jurors. Instead of exercising discretion in the matter of the jury's request for enlightenment, the court erroneously thought it had no discretion to exercise.

When a trial court interrelates with a jury, the overriding consideration should be directed toward assisting the jury to fully and fairly perform its duty in determining the facts and in applying the applicable law. The court should not interpose itself as an impediment to the jury process. The concept of assistance, as opposed to obstruction, is contained within numerous facets of the trial process; e.g., in the admission of relevant evidence which may assist the jury (*Lockhart v. State* (1993) Ind., 609 N.E.2d 1093; *Martin v. State* (1994) Ind.App., 636 N.E.2d 1268; *Summers v. State* (1986) Ind.App., 495 N.E.2d 799) and in the giving of instructions (*David v. State* (1996) Ind., 669 N.E.2d 390).

Be that as it may, here, as in *Anglin,* I fail to discern that the failure of the court to permit the jury to view the exhibit or exhibits resulted in clear and irremedial prejudice to the defendant. The aiding or clarifying aspect of the exhibit was minimal at best. Defendant makes no suggestion that the exhibit in evidence did or did not have any size markings, or whether there was or was not a lab test of the pantyhose.

In essence, then, I conclude that the failure of the court to employ its considerable discretion as to whether or not to permit the jury to see the exhibit a second time did not constitute reversible error. For this reason I concur in result.

2. Once again, as we noted in *Anglin, supra,* 680 N.E.2d at 885, n. 2, the indication in *Jones v. State, supra,* to the effect that a jury is not entitled to view exhibits in any circumstances because the statute is limited to testimony and points of law is overly broad. The discussion in *Jones* was whether or not the jury was in confusion or disagreement with respect to the testimony concerning the exhibits. It did not discuss whether the jury was precluded by the statute from viewing the exhibits. Although our phrasing in *Anglin* spoke in terms of whether a request to view exhibits is *within the scope* of I.C. 34–1–21–6, it more correctly should have couched the question in terms of whether the statute *precludes* a view of exhibits.